UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Cargill, Incorporated<br>                    Movant,<br><br>vs.<br><br>Public Joint Stock Company National Bank Trust<br>                    Respondent. | No. 23 Misc. _____ |

# DECLARATION OF OLIVER CLIFTON IN

## SUPPORT OF CARGILL INCORPORATED's MOTION TO QUASH

I, Oliver Clifton, under penalty of perjury, declare under the laws of the United States of America as follows:

1. I am a Barrister admitted to the bar of the British Virgin Islands (the "**BVI**") and partner at the law firm of Walkers (BVI). I respectfully submit this declaration in support of the motion of Cargill Inc ("**Cargill**") to intervene and quash the subpoenas issued pursuant to the Order by Hon. Paul G. Gardephe on April 18, 2023, in *In Re Ex Parte Application, Under 28 U.S.C. § 1782 of Public Joint Stock Co. National Bank Trust*, 1:23-mc-00006-PGG, Dckt. No. 11 (the "**Order**"). The Order was made pursuant to an application under 28 U.S.C. § 1782, of the Petitioner, Public Joint Stock Company National Bank Trust ("**NBT**").

2. The facts and circumstances contained in this Declaration are within my own personal knowledge.

## *Introduction*

3. I understand that NBT seeks a §1782 discovery order against various entities defined as the "Traders", including *inter alios* Cargill in support of contemplated proceedings in the BVI.

1

4.      Pursuant NBT's memorandum of law in support of its §1782 discovery application, NBT claims that: (1) Diamond Forca Limited ("**Diamond Forca**"), a dissolved company incorporated in the BVI, allegedly operated as a conduit for a transaction that substantially occurred in Russia; and (2) NBT is going to bring a claim in the BVI governed by Russian law, specifically Articles 1, 10, 1064, and 1080 of the Russian Civil Code in respect of the harm caused to NBT by *inter alia* the relevant transaction.

5.      A recent search of the publicly available records of the BVI Court did not produce any evidence that NBT had filed BVI proceedings relating to NBT's claims. Attached as Exhibit 1 to this Declaration are BVI Court search results for all the "Conduit Companies" referred to in Annex 2 to NBT's motion as well as for Cargill Inc, Cargill Incorporation and Cargill FS.

6.      In my view there is no reality to the prospective BVI claim for at least two reasons.

7.      First, the BVI Courts have no jurisdiction to hear the prospective BVI claim because there is not a sufficient nexus to the BVI.

8.      Second, because NBT is owned by the Russian State it makes it difficult, if not a practical impossibility, for it to retain BVI counsel.

### ***The BVI Court would decide not to exercise jurisdiction***

9.      If the prospective BVI claim was issued by NBT against inter alias Diamond Forca and Cargill, NBT would have to serve Cargill out of jurisdiction.

10.     I adopt the Lord Collins outline of the relevant approach on service out of jurisdiction in his judgment for the Judicial Committee of the Privy Council in *Nilon Limited and Anors v Royal Westminster Investment S.A. and ORs* [2015] UKPC 2 (on appeal from the BVI). This was a case in which an application was made to set aside service out of jurisdiction. His Lordship stated at para 13: "*On an application for service out of the jurisdiction, three requirements have to be satisfied.* **First***, the claimant must satisfy the court that in relation to the foreign defendant there is a serious issue to be tried on the merits, i.e. a substantial question of fact or law, or both.* **Second***, the claimant must satisfy the court that there is a good arguable case that the claim falls within one or more classes of case in which*

*permission to serve out may be given. In this context 'good arguable case' connotes that one side has a much better argument than the other.* **Third**, *the claimant must satisfy the court that in all the circumstances the forum which is being seised (here the BVI) is clearly or distinctly the appropriate forum for the trial of the dispute, and that in all the circumstances the court ought to exercise its discretion to permit service of the proceedings out of the jurisdiction.*" (Emphasis added). Attached as Exhibit 2 to this Declaration is a copy of the *Nilon* judgment. .

11. In this declaration I focus on the second and third requirements in respect of service out. Given the level detail as to NBT's prospective BVI claim it would not be appropriate for me to comment on whether they would meet the first requirement.

12. The second requirement is that the Court must be satisfied that one of a number of "gateways" (criteria) for service out in the Eastern Caribbean Supreme Court Civil Procedure Rules ("**EC CPR**") r.7.3 would apply to service of foreign defendants out of jurisdiction. Attached as Exhibit 3 to this Declaration is a copy of EC CPR r.7.3. I address the four gateways which NBT might seek to invoke below. In my view, NBT could not serve Cargill out of jurisdiction relying on any of these four gateways for the reasons which I address below.

<u>The "necessary and proper party" gateway</u>

13. One gateway which will likely be relied upon in the prospective BVI claim would be the "necessary and proper party" gateway under EC CPR r.7.3(2).

14. To fall within this gateway:

    a. there must be a real issue to be tried between the claimant and the "anchor defendants" within the jurisdiction (i.e. NBT as claimant and Diamond Forca as anchor defendant in this instance); and

    b. the claimant must be seeking to serve the claim out of jurisdiction on another person (i.e. Cargill) who is a necessary and proper party.

15. There is however no serious issue as between NBT and Diamond Forca (see *Erste Group Bank AG v JSC "VMZ Red October"* [2015] EWCA Civ 379 [2015] 1 CLC 706, which would be persuasive authority in the BVI, considering the same "*necessary and proper party*"

3

gateway under English Civil Procedure Rules). Attached as Exhibit 4 to this Declaration is a copy of the *Erste* judgment.

16. If the anchor defendant fails to acknowledge service or defend the claim, there is highly unlikely to be a real issue to be tried which it is reasonable for the court to try, see *Erste Group Bank* at paras 78 and 136.

17. Diamond Forca has been dissolved following voluntary liquidation. Attached as Exhibit 5 is a copy of the company search results for Diamond Forca. The BVI Court can restore a BVI company into liquidation (s218A, BVI Business Companies Act, 2004 (the "**BCA**")). Attached as Exhibit 6 to this Declaration is a copy of section 218A of the BCA. Diamond Forca could not however be restored and returned to its directors without the appointment of a new registered agent. In my experience, it is unlikely that a registered agent would accept an appointment in respect of Diamond Forca knowing, upon conducting client due diligence, that the ultimate beneficial owner is accused of fraud, and that the costs of restoration were being met by NBT, as funded by the Russian State. In any case, a restoration of Diamond Forca by NBT for the sole purpose of providing an 'active' anchor defendant in the BVI would be wholly artificial, and would not allow NBT to circumvent the *Erste* judgment.

18. Given Diamond Forca has been dissolved and there is no realistic prospect of it being restored, following the filing and service of the prospective BVI claim, Diamond Forca will not acknowledge service and default judgment may be entered against it by NBT. There is therefore no required real issue between NBT and Diamond Forca.

*Claims in tort and in restitution gateways*

19. "*A claim form may be served out of the jurisdiction if a claim in tort is made and the act causing the damage was committed within the jurisdiction or the damage was sustained within the jurisdiction.*" (EC CPR r7.3(4)) "*A claim is made for restitution where the defendant's alleged ability arises out of acts committed within the jurisdiction or out of acts which, wherever committed, were to the detriment of a person domiciled within the jurisdiction.*" (EC CPR r7.3(9))

20. These gateways cannot be invoked as no wrong is alleged by NBT to have been committed in the BVI nor is it alleged any damage has been sustained within the BVI.

*Claims about companies gateway*

21. "*A claim form may be served out of the jurisdiction if the subject matter of the claim relates to – (a) the constitution, administration, management or conduct of the affairs; or (b) the ownership or control of a company incorporated within the jurisdiction.*" (EC CPR r7.3(7))

22. This gateway cannot be invoked as NBT's claims do not relate to the constitution, administration, management, conduct ownership or control of a company incorporated in the BVI. Whilst the identity of the ultimate beneficial owner of Diamond Forca may be an allegation that is made in the prospective BVI proceedings that, of itself, does not make the BVI the appropriate forum for NBT's claims. There is no suggestion for example that NBT would need to seek a declaration as to the identity of the holder of registered title to the shares in Diamond Forca which issue would quite properly be considered by the BVI Court.

*The BVI is not the forum conveniens*

23. The third requirement is that the claimant (i.e. NBT in this case) would need to satisfy the court that the BVI is the appropriate forum.

24. In *Spiliada Maritime Corp v Cansulex Ltd*, the leading case in which the common law rules on *forum conveniens* and *forum non conveniens* were defined. (See *Spiliada* [1987] A.C. 460. Attached as Exhibit 7 to this Declaration is a copy of the *Spiliada* judgment, (p 481A-D). In considering *forum conveniens* in the context of service out, Lord Goff concluded that: "*The effect is, not merely that the burden of proof rests on the plaintiff to persuade the court that England is the appropriate forum for the trial of the action, but that he has to show that this is clearly so*" (p 481E). "*In other words, the burden is quite simply, the obverse to that applicable where a stay is sought of proceedings started in this country as of right.*" (See also *Nilon*, above at para 62.)

25. Whether the BVI is the natural forum for the prospective BVI claim, the nature of the dispute between the parties will inform the identification of connecting factors (see *Chi Hung Andy Chan et. Al. v Noble More Group Limited et al.* BVIHC 228/2016, judgment of Ramdhani J dated 23 March 2017). Attached as Exhibit 8 to this Declaration is a copy of the *Chi Hung* judgment. In *Amin Rasheed Shipping Corporation v Kuwait Insurance Company* [1984] A.C. 50, Lord Wilberforce stated that: "*In considering this question the court must take into*

5

*account the nature of the dispute, the legal and practical issues involved, such questions as local knowledge, availability of witnesses and their evidence and expense.*" Attached as Exhibit 9 to this Declaration is a copy of the *Amin Rasheed* judgment.

    26.    None of the relevant criteria appear to be met.

        a.    There is a lack of factual connection with the BVI. None of the alleged wrongdoing is said to have occurred in the BVI. In a tort claim, the appropriate starting point is to stand back and identify the place of commission of the tort, since, in the absence of other compelling factors, this is likely to be the appropriate forum. (*VTB Capital Plc v Nutritek International Corp* [2013] UKSC 5, [2013] 2 A.C. 337; applied in *Erste Group Bank AG v JSC "VMZ Red October"* [2015] EWCA Civ 379, [2015] 1 C.L.C. 706. See Dicey at 12–060. Attached as Exhibit 10 is a copy of the *VTB Capital Plc* judgment.

This does not relieve the court from the need to make an overall determination in the light of the issues of fact and law in the case and all the relevant factors, which, in the particular circumstances of the case, may outweigh the importance of the place of the tort (*VTB Capital Plc v Nutritek International Corp*, above, and Dicey at 12–060). Attached as Exhibit 11 to this Declaration is Dicey, Morris and Collins 12-060. The following further factors indicate that the BVI is *forum non conveniens*:

        b.    The underlying claims are governed by Russian law. If the legal issues are complex, or the legal systems very different, the general principle that a court applies its own law more reliably than does a foreign court will help to point to the more appropriate forum. (See *Dicey, Morris & Collins* at 12-034.). Attached as Exhibit 12 to this Declaration is Dicey, Morris and Collins 12-034.

        c.    There is no connection between any of the foreign defendants and the BVI and the anchor defendant(s) in the BVI have been dissolved and it is

6

        unlikely that they can be restored meaning those dissolved companies would play no part in the proceedings (See Erste Group Bank at *136).

    d.    No likely witness for trial are resident in or connected to the BVI.

27.    There is no suggestion that there would be a risk of injustice if the prospective BVI claim was brought in another jurisdiction.

### *NBT's status as an entity owned by the Russian State makes it a practical impossibility for it to retain BVI counsel and thus prosecute a claim before the Commercial Court in the BVI*

28.    BVI counsel would be reasonably expected to observe appropriate limits as set out in the relevant sanctions regime in respect of NBT, even without NBT itself being a "designated entity", by virtue of its ultimate ownership by the Russian state and its apparent ultimate control by Elvira Nabiullina, the governor of the Central Bank of Russia, who is a designated person.[1] Virgin Islands General Licence No. 03, 2023, which took effect from 13 April 2023 and remains in effect for 6 months thereafter unless revoked allows for payment for the provision of legal services to designated persons under either the Russia or Belarus regime. However, professional legal fees must not exceed USD 600,000 in total for the duration of the Licence and NTB's litigation fees in the prospective BVI claim could easily exceed this limit by some margin. Attached as Exhibit 13 is Virgin Islands General Licence No. 03, 2023.

29.    If NBT seeks to retain BVI counsel to pursue its prospective BVI claim then it will face significant practical hurdles. It is unlikely that BVI counsel would accept instructions from NBT and risk the reputational cost of representing a Russian state-owned client (whether or not it is itself a designated entity) in the current political climate, particularly in the BVI.

30.    Further, notwithstanding the effect of the general licence, it has become effectively impossible for funds to flow from Russian entities, or on behalf of Russian entities, to law firms in the BVI, even where sanctions do not specifically prohibit the transaction. The banks and intermediary banks which would be required to process the transaction cannot

---

[1] See the relevant UK OFSI Consolidated List Search result at the following web address: https://sanctionssearchapp.ofsi.hmtreasury.gov.uk/suspect/15593

reasonably be expected to bear their own reputational risk of wiring funds on behalf of Russian entities and especially sanctioned Russian entities, even if ultimate receipt of the funds is permitted under the general licence. Ongoing payments to BVI counsel would need to be made outside of the international banking system and in cash, which apart from presenting substantial logistical difficulties, would present a near insurmountable regulatory and reputational risk for BVI counsel.

31. The effect of the sanctions and licensing provisions, reputation risk and practical difficulties making payments from Russian entities to BVI law firms means that it is inherently unlikely that a legal practitioner in the BVI would accept an instruction to act for NBT.

32. The prospective BVI claims would be heard by the Commercial Division of the BVI Court sitting (the "**Commercial Court**") on the basis that it concerns business contracts and/or financial services and/or the operation of markets and exchanges and/or mercantile agency and usages (see EC CPR r.69A.1(2)). Attached as Exhibit 14 is a copy of EC CPR r.69A.1(2).

33. This is significant because parties to proceedings in the Commercial Court must be represented by BVI counsel (EC CPR r.69B.4(4)). Attached as Exhibit 15 is a copy of EC CPR r.69B.4(4). NBT would not be able to prosecute the prospective BVI claim without BVI counsel.

### *Conclusion*

34. For the reasons set out in this affidavit, I am of the view that the BVI Court would find that none of the available gateways for service out apply to the prospective BVI claim and would find that the BVI was not the appropriate forum for the same. Furthermore, NBT would find it difficult, if not practically impossible, to retain the BVI counsel necessary to pursue the prospective BVI claim.

35. Attached to this Declaration are true and correct copies of the following documents:

    Exhibit 1:    BVI Court search results

Exhibit 2: *Nilon Limited and Anors v Royal Westminster Investment S.A. and ORs* [2015] UKPC 2

Exhibit 3: EC CPR 7.3

Exhibit 4: *Erste Group Bank AG v JSC "VMZ Red October"* [2015] EWCA Civ 379 [2015] 1 CLC 706

Exhibit 5: BVI company search results for Diamond Forca

Exhibit 6: Section 218A BVI Business Companies Act, 2004

Exhibit 7: *Spiliada* [1987] A.C. 460.

Exhibit 8: *Chi Hung Andy Chan et al v Noble More Group Limited et al.* BVIHC 228/2016

Exhibit 9: *Amin Rasheed Shipping Corporation v Kuwait Insurance Company* [1984] A.C. 50

Exhibit 10: *VTB Capital Plc v Nutritek International Corp* [2013] UKSC 5, [2013] 2 A.C. 337

Exhibit 11: Dicey, Morris & Collins at 12-060

Exhibit 12: Dicey, Morris & Collins at 12-034

Exhibit 13: Virgin Islands General Licence No. 03, 2023

Exhibit 14: CPR r.69A.1(2)

Exhibit 15: CPR r.69B.4(4)

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this day of April 28, 2023

Oliver Clifton