UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Cargill, Incorporated,<br><br>       Movant,<br><br>v.<br><br>Public Joint-Stock Company<br>National Bank Trust,<br><br>       Respondent. | No. 23-mc-00134-PGG |

# PUBLIC JOINT-STOCK COMPANY NATIONAL BANK TRUST'S MEMORANDUM OF LAW IN OPPOSITION TO <u>CARGILL, INCORPORATED'S MOTION TO QUASH</u>

STEPTOE & JOHNSON LLP

Charles Michael
Evan Glassman
Jason E. Meade
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Public Joint-Stock Company*
 *National Bank Trust*

June 2, 2023

# **TABLE OF CONTENTS**

BACKGROUND .................................................................................................................................. 1

ARGUMENT ....................................................................................................................................... 2

    I.   CARGILL'S MOTION TO QUASH IS WITHOUT MERIT ............................................. 2

        A.  The Requested Discovery is "For Use" in BVI Proceedings ........................................... 3

        B.  The BVI Proceedings are Actually Pending and Not Merely Speculative ...................... 4

        C.  Cargill's Characterization of the Facts is Not a Reason to Deny Discovery ................... 7

        D.  The Subpoenas Are Not Unduly Intrusive or Burdensome............................................... 8

CONCLUSION .................................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                     **Page(s)**

*In re Accent Delight Int'l Ltd.*,
  869 F.3d 121 (2d Cir. 2017) ......................................................................................... 3, 10

*In re Att'y Gen. of British Virgin Islands*,
  No. 1:21-mc-00768, 2021 WL 5361073 (S.D.N.Y. Oct. 29, 2021) ......................................... 3

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ................................................................................................. 4

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*,
  798 F.3d 113 (2d Cir. 2015) ............................................................................................ 4, 5

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of
  Fortress Inv. Grp. LLC*,
  No. 14-cv-1801(NRB), 2014 WL 3404955 (S.D.N.Y. July 9, 2014) ..................................... 10

*Deposit Insurance Agency v. Leontiev*,
  No. 17-mc-00414(GBD)(SN), 2018 WL 3536083 (S.D.N.Y. July 23, 2018) ....................... 7, 8

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) ................................................................................................ 4

*In re Furstenberg Fin. SAS*,
  334 F. Supp. 3d 616 (S.D.N.Y. 2018) .................................................................................. 5

*In re Hornbeam Corp.*,
  No. 14 Misc. 424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ....................................... 3, 5

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ........................................................................................................... 8

*In re Nat'l Bank Trust*,
  Civ. A. No. 3:20-mc-85(CSH), 2023 WL 2386392 (D. Conn. Mar. 7, 2023) ....................... 6, 9

*In re Noguer*,
  No. 18-mc-498(JMF), 2019 WL 1034190 (S.D.N.Y. Mar. 5, 2019) ....................................... 3

*In re PJSC Nat'l Bank Trust*,
  No. 23-mc-00867(PKC), 2022 WL 3925737 (S.D.N.Y. Aug. 31, 2022) ................................. 6

*In re Tethyan Copper Co. Pty. Ltd.*,
  No. 21 Misc. 377, 2022 WL 1266314 (S.D.N.Y. Apr. 28, 2022) ............................................ 3

*In re Top Matrix Holdings Ltd.*,
  No. 18-mc-465(ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ........................................... 5

**Statutes**

28 U.S.C. § 1782................................................................................................................*passim*

Public Joint-Stock Company National Bank Trust ("NBT"), by and through its undersigned counsel, hereby submits this memorandum of law, and accompanying declarations with exhibits thereto, in opposition to Cargill, Incorporated's ("Cargill") motion to quash certain subpoenas issued by NBT (the "Motion").

## BACKGROUND

On January 10, 2023, NBT filed an *ex parte* application to seek discovery from certain U.S. banks for use in anticipated foreign proceedings in the British Virgin Islands ("BVI"), pursuant to 28 U.S.C. § 1782 (the "Application"). *See* ECF No. 4-2. NBT indicated that it expected to use the evidence obtained pursuant to the Application to aid in anticipated proceedings which it intended to initiate in the BVI. This Court granted the Application and authorized NBT to take the requested discovery by order dated April 18, 2023. *See* ECF No. 4-1.

Cargill filed this Motion on April 29, 2023, alleging that the anticipated BVI proceedings were illusory, that such proceedings would be practically impossible to bring and that NBT never really intended to bring them anyway, and that NBT had misled the Court and abused the § 1782 process as pretext for some other, nefarious purpose.[1] None of this is true. Indeed, Cargill's speculation about the existence *vel non* of the BVI proceedings is demonstrably false, and the entire premise of its Motion is inaccurate.

The accompanying June 1, 2023 Declaration of Andrew Emery ("Emery Decl."), a partner at the law firm of Emery Cooke in the BVI, confirms that the BVI proceedings are underway. NBT retained Emery Cooke in April 2022 to advise it in connection with NBT's

---

[1] On May 4, 2023, Louis Dreyfus Company Suisse SA, Louis Dreyfus Company Asia PTE Ltd., and Louis Dreyfus Trading Company Trading & Service Co. SA filed a motion to intervene in the original Application and to stay the subpoenas issued thereunder, in anticipation of a separate motion to quash. *See In re* Ex Parte *Application, Under 28 U.S.C. § 1782, of Pub. Joint-Stock Co. Nat. Bank Trust*, No. 23-mc-00006-PGG, ECF No. 13 (S.D.N.Y. May 4, 2023).

1

claims in the BVI arising out of the fraudulent conduct described in the Application. Emery Decl. ¶ 6. In September 2022, NBT made an application to restore the status of certain previously-dissolved BVI companies, so that they could be joined as parties to subsequent substantive proceedings. *Id.* ¶ 11. That order, ordering that the companies be restored to the register, was granted in February 2023 by Judge Wallbank of the Commercial Division of the BVI court. *Id.* ¶ 12. On May 4, 2023, NBT filed an application in the BVI for permission to issue and serve proceedings outside of the jurisdiction on foreign defendants, including Cargill. *Id.* ¶ 16. The application was heard and granted by Judge Wallbank on May 11, 2023. *Id.* ¶ 17. In so doing, Judge Wallbank determined that NBT had presented a serious issue to be tried on the merits, that the BVI was the appropriate forum for trial of the dispute, and that NBT had satisfied the requirements for service out of the BVI. *Id.* ¶ 18. NBT anticipates that it will serve the BVI proceedings on the foreign defendants by the end of June 2023.

## ARGUMENT

### I. CARGILL'S MOTION TO QUASH IS WITHOUT MERIT

Cargill contends that the requested discovery is not "for use in a non-speculative foreign proceeding," as required under § 1782, due to a variety of purportedly "insurmountable obstacles to bringing a valid legal claim." ECF No. 2 ("Memo") at 1. In particular, Cargill claims (i) that NBT would not be able to use the requested discovery in the BVI proceedings because the BVI courts would lack jurisdiction over NBT's claims, and (ii) that the BVI proceedings are neither "possible" nor "within 'reasonable contemplation.'" *Id.* at 7-8. However, Cargill's position rests on plainly erroneous factual assumptions concerning the status of legal proceedings in the BVI, and on legal arguments concerning BVI law which this court is not obligated to (and in fact, cannot) resolve.

2

### A. The Requested Discovery is "For Use" in BVI Proceedings

To show that sought-after discovery is "for use" in a foreign proceeding, "a Section 1782 applicant must establish that he or she has the practical ability to inject the requested information into a foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131-32 (2d Cir. 2017). An applicant "need only 'identify some discernible procedural mechanism' for introducing the evidence they seek" in order to satisfy its burden "to show that the foreign tribunal at issue will 'take and hear new evidence' in at least some respect." *In re Noguer*, No. 18-mc-498(JMF), 2019 WL 1034190, at *3 (S.D.N.Y. Mar. 5, 2019) (cleaned up). Here, it is clear that evidence, such as the discovery sought under the subpoenas, can be introduced into the BVI proceedings; "courts in this district routinely grant § 1782 applications for discovery for use in the BVI." *In re Tethyan Copper Co. Pty. Ltd.*, No. 21 Misc. 377, 2022 WL 1266314, at *2 (S.D.N.Y. Apr. 28, 2022); *see also id.* ("[T]he BVI Court has already accepted some evidence from Respondents, so there is no indication it would not be receptive to further discovery requests."); *In re Att'y Gen. of British Virgin Islands*, No. 1:21-mc-00768, 2021 WL 5361073, at *1 (S.D.N.Y. Oct. 29, 2021) ("[T]he BVI High Court is a foreign tribunal receptive to U.S. federal court assistance[.]"); *In re Hornbeam Corp.*, No. 14 Misc. 424, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014) ("The BVI courts are at least not obviously unreceptive to my assistance."), *aff'd*, 722 F. App'x 7 (2d Cir. 2018).

Cargill claims that "as a matter of logic, there is no 'practical ability' to introduce evidence into a proceeding that cannot exist in the first place." Memo at 8. In support of this proposition, Cargill relies on a declaration by Oliver Clifton, a BVI-based attorney, in which he opines that the BVI court would not permit NBT to serve Cargill out of jurisdiction. *See* ECF No. 3 ("Clifton Decl.") ¶¶ 9-12, 34. But the Second Circuit has warned against efforts "to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and,

3

perhaps, biased interpretations of foreign law" based on "battle-by-affidavit of international legal experts," and rejected such "speculative forays into legal territories unfamiliar to federal judges" as "a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995).

In any event, Mr. Clifton's speculation about what the BVI court *might* do is no substitute for what the BVI court has *actually done*.[2] In fact, the BVI court has already authorized NBT to serve proceedings out of jurisdiction, and in so doing has already concluded that, *inter alia*, NBT has met the necessary criteria to serve a foreign defendant and that the BVI is the proper forum for the dispute.[3] *See* Emery Decl. ¶ 18. Accordingly, NBT has demonstrated that it has the "practical ability" to introduce evidence into a foreign proceeding in the BVI.

B.   **The BVI Proceedings are Actually Pending and Not Merely Speculative**

The underlying foreign proceedings "must be within *reasonable* contemplation," and so "the applicant must have more than a subjective intent to undertake some legal action, and must instead provide some objective indicium that the action is being contemplated." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123-24 (2d Cir. 2015) (emphasis in original). It is clear that NBT presented sufficient indicia for this Court to determine that the proceedings were within reasonable contemplation at the time the Application was filed.

---

[2] Mr. Clifton also based his conclusion on a number of erroneous factual premises. For example, while Mr. Clifton claimed that "Diamond Forca has been dissolved and there is no realistic prospect of it being restored," Clifton Decl. ¶ 18, Diamond Forca had already been ordered to be restored by a BVI court order dated February 2, 2023. *See* Emery Decl. ¶ 12, Exhibit 1. Mr. Clifton also claimed that it was "a practical impossibility" for NBT "to retain BVI counsel," Clifton Decl. at 7, but NBT had already retained BVI counsel to advise on its claims by April of 2022. *See* Emery Decl. ¶ 6.

[3] Cargill may contest jurisdiction in the BVI proceedings in due course, but this Court need not resolve that issue here. *Cf. Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 n.1 (2d Cir. 2012) (noting that "a clear danger to comity and international relations is presented where a court familiar with one system of law attempts to declare the meaning of the laws in another legal system") (citation omitted).

Moreover, the BVI proceedings are now actually pending, thereby rendering moot Cargill's speculation that "NBT never actually intends to file in BVI." Memo at 12.

The Application was accompanied by a sworn declaration from counsel which indicated that NBT "intends to initiate [proceedings] shortly in the British Virgin Islands," and explained some of the legal theories on which NBT intends to rely. ECF No. 4-4 ¶¶ 3, 54-58.[4] Courts within this circuit have "found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement." *In re Top Matrix Holdings Ltd.*, No. 18-mc-465(ER), 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020); *see, e.g.*, *In re Hornbeam Corp.*, 722 F. App'x at 9-10 (summary order) (finding a "sufficiently 'concrete basis'" for contemplated foreign proceeding where applicant "represented that it intended to initiate further litigation" and "articulated a theory on which it intended to litigate"); *In re Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 619 (S.D.N.Y. 2018) (citation omitted) ("[A]applicants carried their burden of showing that a foreign proceeding is within reasonable contemplation by filing declarations swearing that they intend to file a criminal complaint against the movant, and articulating a specific legal theory on which they intend to rely."), *aff'd*, 785 F. App'x 882 (2d Cir. 2019); *compare Certain Funds*, 798 F.3d at 124 (showing was not made where applicant alleged only "that they had retained counsel and were discussing the *possibility* of initiating litigation") (emphasis in original).

Cargill's speculation that "NBT never actually intends to file in BVI because it knows it does not have a viable claim," Memo at 12, simply does not comport with the facts. As discussed, NBT has already sought—and obtained—permission from the BVI courts to initiate

---

[4] Cargill's contention that NBT was "still in the process of considering whether to even bring a claim," Memo at 11, fails in light of Mr. Dooley's sworn declaration that NBT did intend to initiate proceedings in the BVI. Indeed, NBT has been moving forward with the BVI proceedings without having actually received the requested discovery.

5

the proceedings and to serve foreign defendants. *See* Emery Decl. ¶¶ 17-18. Proceedings in the BVI are not only within reasonable contemplation, but they are now pending. *See id.* ¶ 20, Emery Decl. Ex. 3.

Given that NBT engaged BVI counsel nearly a year ago and is actively moving forward with the BVI proceedings, Cargill's repeated references to the purportedly preclusive effect of sanctions serve little purpose other than to attempt to smear NBT. *See, e.g.*, Memo at 2 (arguing that "the requested discovery will go to a Russian entity during a time of global conflict and strife"), 17 (characterizing the application as "a blatant attempt by an entity that is demonstrably controlled by Russia's Central Bank to obtain records from Western businesses under the guise of a foreign proceeding the Applicant has no ability, or intent, to ever bring for purposes that are entirely unknown"). It is clear, however, that "U.S. sanctions on the Central Bank and other Russian entities neither directly bar the relief NBT seeks nor constitute sufficient discretionary grounds to deny NBT's application." *In re Nat'l Bank Trust*, Civ. A. No. 3:20-mc-85(CSH), 2023 WL 2386392, at *11 (D. Conn. Mar. 7, 2023); *see also id.* at *10 ("[I]t is simply not the place of this Court to engage in foreign policy. This Court's ambit is to apply the law as laid out in the Constitution, federal statutes, and federal regulations to the cases that come before it; it is not to divine from such documents a general U.S. policy disfavoring a foreign entity, and on that basis to deny relief to which that entity would otherwise be entitled."); *In re PJSC Nat'l Bank Trust*, No. 23-mc-00867(PKC), 2022 WL 3925737, at *1 (S.D.N.Y. Aug. 31, 2022) ("[T]he Court is unable to conclude that an Order permitting a Russian entity to conduct discovery in aid of litigation in Cyprus should be vacated because the EU subsequently sanctioned NBT, coupled with the foreign policy of the United States that condemns the actions of the country in which NBT is organized.").

Accordingly, this Court correctly determined that the BVI proceedings were within reasonable contemplation at the time of the Application and properly granted NBT's request to take discovery under § 1782 for use in those proceedings.

### C. Cargill's Characterization of the Facts is Not a Reason to Deny Discovery

Cargill spends much of its Memo disputing NBT's characterization of the facts underlying the BVI proceedings. This Court has already received and reviewed NBT's factual submissions in connection with its original Application, and NBT will not restate those facts or rebut each assertion made by Cargill here. It goes without saying that NBT strongly disputes Cargill's characterization of the facts, and is confident that it will be able to prove its case in the BVI proceedings. Moreover, Cargill does not argue that this Court should attempt to assess the merits of the underlying proceeding, and cites no authority for such a proposition. There is no requirement that a party seeking to take discovery under § 1782 must demonstrate a likelihood of success on the merits, nor plead facts which would be sufficient to survive a motion to dismiss in federal court. Accordingly, the materials submitted in connection with the Application were intended only to provide background for the underlying claims, which will ultimately be adjudicated by a BVI court. Cargill itself acknowledges that "the Court need not consider the merits of the arguments that Applicant plans to raise in a foreign proceeding to decide the present matter," Memo at 12, which should end the inquiry.

Cargill suggests conspiratorially that NBT is embarking on a "fishing expedition for some unstated, potentially nefarious purpose," punctuating the accusation with another irrelevant reminder that NBT is "a bank owned by the Central Bank of Russia and controlled by the Russian state." Memo at 2. The court in *Deposit Insurance Agency v. Leontiev*, No. 17-mc-00414(GBD)(SN), 2018 WL 3536083 (S.D.N.Y. July 23, 2018), considered and rejected arguments similar to those advanced by Cargill. There, the party opposing discovery alleged that

7

the "version of events" presented by the applicant, a Russian governmental bankruptcy receiver, "lack[ed] evidentiary support beyond self-serving affidavits submitted by its Russian attorneys or the . . . bankruptcy administrator." *Id.* at *10. The applicant responded that this "argument improperly [went] to the merits of the [foreign] bankruptcy proceeding." *Id.*

The court in *Leontiev* noted that, "[i]n a § 1782 proceeding, the only issue before the district court is discovery; the underlying litigation rests before a foreign tribunal." *Id.* (cleaned up). The court also stated that "[t]o the extent that a factual finding has been necessary in these proceedings, the Court has weighed the evidence appropriately." *Id.* Notwithstanding the fact that certain factual "assertions by [the applicant's] attorneys rest[ed] only on affidavits without other documentary evidence," the court found that this was "more indicative of a disputed version of the facts underlying the [foreign] bankruptcy action, *which the Court is not permitted to resolve at this time*." *Id.* at *11 (emphasis added).

Here, NBT has amply demonstrated that the requested discovery is for use in a foreign proceeding that was within reasonable contemplation at the time of the Application. The BVI court has already granted NBT's request for permission to serve proceedings outside of the BVI on foreign defendants, which means that it was satisfied by NBT's showing that there was a serious issue to be tried on the merits. *See* Emery Decl. ¶ 18. And NBT has shown that foreign courts have already uncovered evidence of financial fraud involving entities associated with Mr. Shishkanov similar to that alleged here. *See, e.g.*, June 1, 2023 Declaration of Neil Dooley ¶ 10. The Court therefore is under no obligation to second-guess the determinations of the BVI court and to engage on a "speculative foray" into these complex issues at Cargill's urging.

> D. **The Subpoenas Are Not Unduly Intrusive or Burdensome**

Finally, Cargill contends that the requests are "unduly intrusive or burdensome," Memo at 16, and so the court should exercise its discretion to deny the Application under *Intel Corp. v.*

8

*Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). Cargill claims that the requested discovery is "unimaginably intrusive because it represents a blatant attempt by an entity that is demonstrably controlled by Russia's Central Bank to obtain records from Western businesses under the guise of a foreign proceeding the Applicant has no ability, or intent, to ever bring for purposes that are entirely unknown." Memo at 16. Cargill's argument rests on false and self-defeating premises.

Discovery is not inherently intrusive because it is sought by a party that is majority owned by the Central Bank of Russia. Such status is not a valid "basis to deny relief to which that entity would otherwise be entitled." *In re Nat'l Bank Trust*, 2023 WL 2386392, at *11 (finding that U.S. sanctions "neither directly bar the relief NBT seeks nor constitute sufficient discretionary grounds to deny NBT's application"). Cargill's only argument that the documents lack "probative value" and are unduly burdensome is that NBT cannot or will not actually initiate BVI proceedings. Memo at 17. Without that fig leaf, Cargill itself acknowledges that the financial records sought under the Application are "routinely produced." *See* Memo at 21 ("Even so, these 'routine' documents cannot be of any service to NBT for the reason Cargill has already discussed: NBT cannot bring the claims identified in its application in a BVI proceeding").

Cargill also alleges that NBT is "abusing § 1782 by engaging in a fishing expedition in hopes of identifying additional claims or parties for a future proceeding," Memo at 17, because NBT stated that it expected to use the subpoenaed documents "to identify the scope of the Scheme as well as potential other participants." ECF No. 4-3 at 8.[5] This does not indicate that

---

[5] Cargill also points out that while the Application sought "orders, instructions or wire transfers" where the paying or receiving party was a BVI conduit company, one of the accompanying declarations indicated that NBT was seeking records of transactions where the paying or receiving party was a "Trader." Memo at 1 n.1, 11 n.5; *compare* ECF No. 4-2 at 1-2 *with* ECF No. 4-4, ¶ 2. However, the proposed subpoenas that were submitted along with the Application clearly called for information concerning transactions with the BVI conduit companies. *See* ECF Nos. 4-24 through 4-31. As Cargill acknowledges, "the Court has only granted Discovery as to the 'Conduit Companies.'" Memo at 1 n.1, *see* ECF No. 4-1. Cargill treats this as evidence that NBT "is not even sure which

9

NBT will use the discovery to determine whether or not to initiate proceedings in the BVI, because it has already done so. NBT's statement was intended to mean that it believes that the requested documents will help develop the factual record concerning the fraudulent scheme that forms the basis for the BVI proceedings by identifying what happened to the misappropriated funds. NBT also recognizes that the requested documents may identify additional, unknown parties that were involved in the same fraudulent scheme, in which case those parties could be joined to the extant BVI proceedings.[6] NBT cannot be said to have "put[] the cart before the horse" here, particularly since NBT has already initiated the BVI proceedings without having received the requested discovery beforehand. *In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14-cv-1801(NRB), 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014) (noting that "Courts must embrace Congress's desire that broad discovery be available for parties involved in international litigation while also guarding against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place"), *aff'd*, 798 F.3d 113 (2d Cir. 2015).

---

documents it is seeking," which "further confirms that it is seeking to use this Application to determine which claims to bring." Memo at 11 n.5. In fact, the discrepancy was little more than a scrivener's error, and is not indicative of anything more.

[6] The possibility that discovery obtained under a § 1782 application for use in one foreign proceeding could have relevance in another proceeding does not mean that the application is a "fishing expedition," and is not a reason to deny an application. Indeed, the Second Circuit has held that "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." *Accent Delight Int'l*, 869 F.3d at 135. The court further stated that "parties concerned in a particular case that a Section 1782 applicant is attempting to use foreign litigation as a ruse for obtaining discovery for use in other proceedings can and should bring evidence of such chicanery to the Section 1782 court's attention." *Id*. (cleaned up). Cargill has presented no such evidence because it has none.

Additionally, NBT is prepared to enter a Stipulated Confidentiality Agreement and Protective Order which expressly limits its use of any documents obtained pursuant to the Application to the BVI proceedings and any future civil or criminal proceedings related to or arising from the BVI proceedings. *See* June 2, 2023 Declaration of Evan Glassman, Ex. A.  This Stipulated Confidentiality Agreement and Protective Order is adapted from this Court's Model Stipulated Confidentiality Agreement and Protective Order.

It is clear that the requested discovery is "for use" in the BVI proceedings, and that NBT has met all of the statutory requirements under § 1782. Cargill has presented no more than conclusory assertions that the requested discovery would be unduly burdensome or intrusive, and does not contend that there is any other discretionary basis for denying the Application.

## **CONCLUSION**

For the foregoing reasons, the Court properly exercised its discretion in granting the Application. Accordingly, Cargill's Motion is without merit and should be denied.

Dated: June 2, 2023  
New York, New York

STEPTOE & JOHNSON LLP

By: */s/ Evan Glassman*

Charles Michael  
Evan Glassman  
Jason E. Meade  
1114 Avenue of the Americas  
New York, New York 10036  
(212) 506-3900

*Counsel for Public Joint-Stock Company National Bank Trust*