**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
Phone: +1 212 310 8000
Fax: +1 212 310 8007

**Daniel Stein**
+1 212 310 8140
Daniel.Stein@weil.com

May 26, 2026

The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 705
New York, NY 10007

Re: *Cargill, Incorporated v. Public Joint Stock Company National Bank Trust, Case No. 23-mc-00134-PGG*

Dear Judge Gardephe:

Cargill respectfully submits this reply in further support of its motion for reconsideration. NBT's opposition rests on three arguments: that Cargill waived any argument based on the first *Intel* factor; that the Court already considered the first *Intel* factor; and that, in any event, the first *Intel* factor does not apply to these subpoenas. Each argument fails. The Court's Order stated, incorrectly, that Cargill never disputed the first *Intel* factor (Dkt. 74 at 36) and the Court should now consider it.

## I. Cargill Raised the First Intel Factor in its December 2025 Letter—at Its First Reasonable Opportunity.

NBT is correct that "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Here, however, Cargill plainly raised the first *Intel* factor with the Court — and the Court simply overlooked it.

In its December 2025 letter, Cargill explained that NBT "continues to seek discovery through this Court, [though] they have already received discovery pursuant to disclosure orders in the BVI and Cyprus," that "NBT has not identified a single item available in discovery in this Court that would not be available through the ordinary course in the pending BVI matter," and that the BVI High Court intended to schedule a case management conference at which the timetable for discovery would be ordered (Dkt. 59). These propositions are precisely the factors that district courts are to consider, pursuant to the first *Intel* factor — whether the documents sought are within the foreign tribunal's jurisdictional reach and

thus accessible absent § 1782 aid. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). NBT's attempt to recharacterize these statements as "unmoored from any reference to Cargill's involvement in the BVI Proceeding or any discussion of *Intel*" is irreconcilable with its text. Having laid the factual foundation above, Cargill's letter then expressly invoked the first *Intel* factor in support of its argument that § 1782 discovery was unnecessary (Dkt. 59). There is no "separate point" that the citation to *Intel* could be addressing, which is why NBT points to none. Moreover, it is of no import that the December 2025 letter didn't cite *Klein* and *Kiobel* or delve into the "real party" analysis. These cases do not relate to an independent argument — they are authorities that explain how to apply the first *Intel* factor in a specific set of circumstances. Cargill's motion for reconsideration simply used *Klein* and *Kiobel* to elaborate on an argument before the court.

Furthermore, Cargill could not have been expected to raise the first *Intel* factor any earlier. When Cargill filed its motion to quash in April 2023, no BVI proceeding existed. Cargill was not a participant in any foreign action at that time and therefore the first *Intel* factor was not implicated. Cargill raised the argument at its first reasonable opportunity — as soon as the BVI High Court upheld jurisdiction and revealed its intent to proceed with discovery. That is not gap-plugging; it is responsive briefing on a development that postdated Cargill's original motion by more than two years.

## II. The Court's Order Failed to Consider the First Intel Factor and Dispensed with It Based on a Factual Error.

NBT argues that reconsideration is also unwarranted because the Court already conducted a comprehensive discretionary analysis (Dkt. 87 at 8). But even accepting that characterization, it misses Cargill's central point — that the Court's analysis of the first *Intel* factor rested on a false premise. The Court stated, incorrectly, that Cargill never raised or disputed the factor and did not consider it on that basis (Dkt. 74 at 36). That is the oversight that reconsideration exists to correct.

Nevertheless, NBT's assertion is false. NBT touts the Order's "five pages of discussion of the discretionary *Intel* factors," omitting that all five pages are devoted exclusively to factor four (Dkt. 87 at 8). It strains credulity to argue that the Court substantively considered the first *Intel* factor when the Order expressly states that Cargill did not dispute it and proceeds to analyze only the fourth. NBT's fallback — that the Order's "multiple explicit references" to the BVI proceeding show the Court considered the spirit of the first factor, fares no better. Those references appear in the statutory "for use" analysis — not the discretionary *Intel* discussion. As the Court's own framework illustrates, the § 1782 analysis proceeds sequentially — "once the statutory requirements are met, a district court is free to grant discovery in its discretion" (Dkt. 74 at 18 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004)) (quoting *In re Metallgesellschaft AG*, 121 F.3d 77, 78 (2d Cir. 1997) (internal quotations omitted)). And it is sequential for good reason — the statutory analysis asks only whether § 1782 *can* be granted; the discretionary analysis asks whether it *should* be. References to the BVI proceeding in the former cannot satisfy the Court's obligation to conduct the latter. NBT cannot point to any passage in the Order where the Court weighed whether the evidence sought is within the foreign tribunal's jurisdictional reach (the first *Intel* factor) — because no such analysis exists.

**III. The First Intel Factor Applies Even Though the Subpoenas are Directed to the Respondent Banks.**

NBT further contends that the first *Intel* factor is inapplicable because the subpoenas are directed to the Respondent Banks, not Cargill, and do not seek Cargill's documents. That argument falls short. The relevant inquiry, as *Klein* makes clear, is "'whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application.'" *In re Ex parte Klein*, 2023 U.S. Dist. LEXIS 227152, at *28 (S.D.N.Y. Dec. 21, 2023) (quoting *In re Porsche Automobil Holding SE*, 2016 U.S. Dist. LEXIS 20012, at *21 (S.D.N.Y. Feb. 18, 2016)). NBT attempts to distinguish *Klein* by claiming that, while the § 1782 applicant in *Klein* sought records of parties that could have been obtained in the foreign litigation, NBT merely seeks documents that "relate to, or could be used against," Cargill (Dkt. 87 at 7).

Not true. NBT seeks "copies of any orders, instructions, or wire transfers in excess of $50,000 in the period between 1 June 2013 and 30 September 2017, where the paying or receiving party was one of ['the Traders']"[1] (Dkt. 4.4 at 1). NBT does not simply request bank documents for transactions that *relate* to Cargill, but rather bank documents for transactions in which Cargill was a party. Of course, Cargill has access to records of transactions in which it is involved. As Cargill accurately stated in its Motion to Quash, NBT "seeks access to a broad swath of Cargill's confidential and proprietary banking records" (Dkt. 2 at 1). NBT cannot adequately distinguish *Klein* because it is directly on point. Like in *Klein*, NBT seeks Cargill's bank records, and, like in *Klein*, these records could be produced by Cargill itself in the BVI without the need for foreign judicial intervention.

Further, as NBT acknowledges, the discretionary factors should not be applied "mechanically" (Dkt. 87 at 8). Ironically, NBT's argument rigidly fixates on who holds the records and whose records they are, instead of the central question of whether the BVI court can obtain the evidence. Here, the BVI court can. Cargill's December 2025 letter explains that the BVI court can order discovery — including "from non-parties with the court's permission" (Dkt. 59). That is the showing the first *Intel* factor requires: not that Cargill possesses the records or that they are Cargill's records in the possession of a third party, but that the foreign tribunal's own processes can reach the evidence sought through § 1782. To hold otherwise defeats "the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts'" (Dkt. 74 at 18 (citing *Schmitz*, 376 F.3d at 84 (quoting *In re Metallgesellschaft*, 121 F.3d at 79))). NBT's § 1782 application, seeking a U.S. court's assistance obtaining discovery already available in the BVI, serves neither aim.

---

[1] Annex 3 of NBT's Declaration of Neil Dooley (the "Dooley Declaration") lists, among others, Cargill and Louis Dreyfus entities as "Traders" (Dkt. 4.4 at 18) as reflected in the Court's April 17, 2026 Order (Dkt. 74 at 8-11).

**IV. NBT's Waiver-by-Inconsistency Argument Is Irrelevant and Wrong.**

NBT's argument that Cargill waived the right to raise the first *Intel* factor by "previously advancing a contrary position" is entirely beside the point (Dkt. 87 at 5). Reconsideration turns on whether the Court overlooked matters previously put before it. *Shrader*, 70 F.3d at 257. Cargill raised the first factor, putting it before the Court, and the Court overlooked it (Dkt. 74 at 36). Whether those matters are internally consistent, or ultimately persuasive, is a question for the Court to resolve.

Nevertheless, NBT's argument is flawed. NBT contends that Cargill cannot invoke its participation in the BVI proceeding under the first *Intel* factor after having previously challenged the § 1782 application based on the statutory "for use" requirement (Dkt. 87 at 6). But these positions are not contradictory — they were argued in the alternative and in direct response to an evolving procedural landscape. The December 2025 letter illustrates the point. It maintained that Cargill's jurisdictional challenge defeated the statutory "for use" requirement, while separately arguing that even if the statutory threshold were met, § 1782 aid was unnecessary because discovery was available through the BVI court, and concluded with an express request for alternative relief (Dkt. 59). When the Court's Order resolved the statutory question against Cargill, the motion for reconsideration simply asked the Court to address the alternative argument it overlooked. That is not a "*volte-face*" — it is Cargill asking the Court to consider the implications of its own determination.

**Conclusion**

For the foregoing reasons, Cargill respectfully requests that the Court grant its motion for reconsideration. Furthermore, Cargill respectfully requests that the Court stay production of the ordered discovery pending resolution of this motion. The BVI Proceeding is stayed pending Cargill's jurisdictional appeal and NBT has no present ability to use the subpoenaed records in that action. A brief stay thus causes no prejudice to NBT, while production of confidential financial records to a Russian state-controlled entity cannot be undone.

Respectfully submitted,

/s/ *Daniel L. Stein*
Daniel L. Stein